UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
BRENNAN CENTER FOR JUSTICE          :
AT NEW YORK UNIVERSITY SCHOOL OF LAW, :
                                    :
       Plaintiff,                   :
                                    :        21-cv-2443 (JSR)
       -v-                          :
                                    :        MEMORANDUM ORDER
U.S. IMMIGRATION AND CUSTOMS        :
ENFORCEMENT,                        :
                                    :
       Defendant.                   :
------------------------------------ x

JED S. RAKOFF, U.S.D.J.

On November 3, 2020, Plaintiff Brennan Center for Justice ("Brennan Center") submitted a request for records pursuant to the Freedom of Information Act ("FOIA") to Defendant U.S. Immigrations and Customs Enforcement ("ICE"). Part One of the request sought five specific Homeland Security Investigations ("HSI") agent handbooks; Part Two sought "[a]ny memoranda or training materials issued from January 21, 2017 to the date of this request that purport to explain the policies behind, or guide agents in implementation of, the documents above." ICE acknowledged receipt of the request but did not thereafter produce any records or otherwise issue a determination regarding the request.

As a result, on March 19, 2021, the Brennan Center filed a complaint in federal district court, alleging that ICE had violated FOIA by unlawfully withholding documents responsive to the Brennan Center's request. On April 12, 2021, this Court held a conference

and ordered ICE to release its production to the Brennan Center by July 15, 2021. ICE released its first "final production" on May 28, 2021, releasing eighty pages in full while withholding one page in full and 189 pages in part under FOIA Exemptions (b)(5) and (b)(7)(E).

On June 25, 2021, counsel for the Brennan Center alerted ICE that the Brennan Center believed there was additional information to which it was entitled and that it contested some of ICE's withholdings. The parties continued to communicate regarding the productions and withholdings. On August 5, 2021, counsel for ICE reported that ICE had construed Part Two of the request as seeking only memoranda or training materials that directly referenced the handbooks requested in Part One, and that ICE had run its searches accordingly. The Brennan Center disagreed with this construction of Part Two of the request. Counsel for ICE indicated that the Brennan Center could file a new FOIA request for materials that did not directly reference the handbooks.

On August 9, 2021, ICE released its second "final response" to the Brennan Center's request. This response stated that ICE had reprocessed 110 responsive pages of records and lifted certain withholdings. ICE released thirty-two pages in full while withholding seventy-eight pages pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).

On August 13, 2021, following the Brennan Center's review of the pages released, the Brennan Center repeated its position that ICE's reading of Part Two of the request was "artificially strained." Counsel for the Brennan Center asked if ICE would be willing to run the search again. Counsel for ICE responded that "ICE is not willing to run any additional searches at this time – ICE's position is that they searched for materials that directly related to the handbooks requested, which is what you asked for."

Now before the Court are the parties' cross motions for summary judgment. See ECF Nos. 15, 18. Two issues remain in dispute: (1) whether the search ICE conducted was adequate, and (2) whether ICE properly withheld several sections of a requested handbook pursuant to FOIA Exemption 7(E). As set forth in further detail below, the Court finds that ICE's search was inadequate and orders ICE to conduct a new search. The Court also finds that while ICE properly withheld some sections under FOIA Exemption 7(E), other sections were not properly withheld under Exemption 7(E). Accordingly, the Court grants partial summary judgment in favor of the Brennan Center, on the grounds that ICE's search was inadequate and that Sections 7.18, 11.6, 12.1, 12.2, 12.4, 12.5, and 12.7 of the National Security Investigation ("NSI") Handbook were not properly withheld under FOIA Exemption 7(E); and grants partial summary judgment in favor of ICE, on the ground that Sections 7.2,

7.4, 11.3, and 11.4 of the NSI Handbook were properly withheld under FOIA Exemption 7(E).

## Background

Except where otherwise noted, the following facts, either undisputed or taken most favorably to the non-moving party, are taken from the Brennan Center's Rule 56.1 Statement, see ECF No. 19, ICE's Rule 56.1 Counter-Statement, see ECF No. 25, and ICE's affidavits, see ECF Nos. 17, 27.[1]

In an email dated November 3, 2020, the Brennan Center submitted a two-part FOIA request to ICE. Part One named five specific HSI agent handbooks; Part Two asked for "[a]ny memoranda or training materials issued from January 21, 2017 to the date of this request that purport to explain the policies behind, or guide agents in implementation of, the documents above."

### ICE's Initial Search

On December 16, 2020, the ICE FOIA Office determined HSI was the program office most likely to have records responsive to the Brennan Center's request, and thus tasked HSI to search for records

---

[1]   See New York Times Co. v. U.S. Dep't of Justice, 872 F.Supp.2d 309, 314 (S.D.N.Y. 2012)(noting that the general rule in the Second Circuit is that "in FOIA actions, agency affidavits alone will support a grant of summary judgment, and Local Civil Rule 56.1 statements are not required").

in response to the request and to provide the search results to the ICE FOIA Office for review and processing. Following standard ICE FOIA procedure, the designated contact person in HSI's Information and Disclosure Unit determined that the National Program Manager/Supervisory Special Agent from the HSI Office of Policy, Planning, and Records Management should conduct the search. The contact person did not task anyone else with the search because the contact person did not believe any other employee was likely to have responsive records. In turn, the National Program Manager determined that HSI Net -- an intranet portal where HSI centrally stores information, including all official HSI documents and policies -- was most likely to contain responsive documents. The National Program Manager searched HSI Net for each handbook identified in the request, including any updated versions or additional responsive records. The National Program Manager identified 245 pages of records as responsive and ultimately provided them to the ICE FOIA Office on December 28, 2020, but provided them to the Brennan Center only after the Brennan Center had brought the instant lawsuit.

ICE's Post-Suit Searches

After the Brennan Center filed suit, ICE determined additional searches should be conducted for records responsive to Part Two of the request. ICE tasked three divisions within HSI,

which directly use and implement the handbooks named in Part One of the request, with these additional searches.

The Transnational Organized Crime Division owns, directly uses, and implements the Human Smuggling and Trafficking Investigations Handbook. The ICE FOIA Office determined that this division was most likely to have any memoranda, guidance, or training materials pertaining to that handbook. This division's FOIA contact person tasked two units with searching for records responsive to Part Two of the request. The Human Trafficking Unit's Section Chief used a file explorer function and the search term "Human Smuggling and Trafficking Handbook" to search his computer files and the unit's shared drive file and folders, as well as Outlook email folders and files related to managing the unit. The Human Smuggling Unit's Section Chief used the terms "handbook" and "guidance" to conduct a manual and search function of his unit's shared drive. Neither unit's searches yielded records responsive to the request.

The National Security Investigations Division owns, directly uses, and implements the National Security Investigations Handbook and the Counterterrorism and Criminal Exploitation Investigations Handbook. The ICE FOIA Office determined that this division was most likely to have any memoranda, guidance, or training materials pertaining to those handbooks. This division's Program Manager was

tasked with performing the search for records responsive to Part Two of the request. The Program Manager used a search function to search the shared drive for "Handbook," "HB," "Training," "NSID Training," and "NSID Handbook." A unit within this division, the Counterterrorism and Criminal Exploitation Unit, directly utilizes the second handbook and would be the unit within the division most likely to have memoranda, guidance, and training materials pertaining to the second handbook. The unit's Criminal Analyst was tasked to perform a search, which he did of his computer files and folders, as well as the unit's shared drive, using the following search terms: "CTCEU Handbook," "Training Memo," "CTCEU Policy," and "CTCEU Guidance." These searches yielded fifteen pages of records responsive to Part Two of the Request.

The Undercover Operations Unit owns, directly uses, and implements the Narcotics and Transnational Organized Crime Rewards Program Handbook. The ICE FOIA Office determined that this division was most likely to have any memoranda, guidance, or training materials pertaining to that handbook. The Section Chiefs of two sections in the unit were tasked with conducting searches for records responsive to Part Two of the request. The first Section Chief conducted a manual and file explorer search of files and folders in his home drive, as well as Outlook subfolders related to oversight and management of the section, using the following

search terms: "DoS," "NRP," "TOCRP," "Rewards Program," and "DoS Rewards Program." This Section's search yielded thirteen pages of material. The second Section conducted a manual and file explorer search of files and folders related to the management of the Section in his home drive, as well as in Outlook, using the following search terms: "Narcotics and Organized Crime," "NRP," "Narcotics Rewards Program," "TOCRP," "TOC Program Rewards," and "Rewards Program." This search yielded two pages of records responsive to the request that had already been identified.

The twenty-one documents produced in these additional searches were provided to the Brennan Center in May 2021.

ICE's Further Searches

After reviewing the twenty-one documents produced by ICE in May 2021, the Brennan Center made further inquiries about ICE's production. ICE did not concede that the initial searches were inadequate, but sought to resolve outstanding issues with the Brennan Center. As a result, ICE conducted three further searches.

The first search was a repeat of the initial December 2020 search of HSI Net for any updated versions of the documents produced in May 2021. This search did not locate any updated versions.

The second search was conducted by the ICE Office of Policy for any updated versions of the documents produced in May 2021. A

Management and Program Analyst searched the internal ICE policy manual database -- which provides a natural language search engine and contains current ICE-wide management and operational policies -- for updated records, as the Analyst determined the database was the most reasonably likely place for responsive records to be found. The search did not yield updated versions of any of the documents.

The third search was based on a statement the Brennan Center identified in one of the handbooks, which provided that the National Security Legal Division of the ICE Office of Principal Legal Advisor provides "trainings," along with other assistance to HSI and ICE. Without conceding the inadequacy of the previous searches, that Division conducted a search for records responsive to Part Two of the Brennan Center's request. The Division's FOIA contact person determined that fourteen Associate Legal Advisors in the Division were most likely to have records responsive to the request. Nine of the Advisors were not involved in work related to the request's subject matter and thus did not conduct searches on the grounds that a search of their records would not be reasonably calculated to uncover any relevant documents. The remaining five Advisors conducted searches of their personal computer files, Outlook email, and Division shared drive using the following search terms: "National Security Investigations Handbook," "National

Security Investigations HB," "NSI HB," "HSI HB 13-03," "HSI SA HB 13-03," "SA HB 13-03," "HB 13-03," "13-03," "Memorandum," "Memo," and "Training." The search did not yield any records responsive to the request.

## **Analysis**

Under Rule 56(a) of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of demonstrating the absence of a genuine dispute of fact, and, to award summary judgment, the court must be able to find after drawing all reasonable inferences in favor of a non-movant that no reasonable trier of fact could find in favor of that party." Palmer/Kane LLC v. Rosen Book Works LLC, 204 F. Supp. 3d 565, 568 (S.D.N.Y. 2016).[2] In resolving FOIA cases on summary judgment -- the preferred procedural vehicle for most FOIA claims -- the court "proceeds primarily by affidavits in lieu of other documentary or testimonial evidence." Long v. Office of Pers. Mgmt., 692 F.3d 185, 190 (2d Cir. 2012).

---

[2]     Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

The central purpose of FOIA is to "promote honest and open government." Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 478 (2d Cir. 1999). FOIA "ensure[s] public access to information created by the government in order to hold the governors accountable to the governed." Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 76 (2d Cir. 2002). The agency bears the burden of demonstrating that it conducted an adequate search for records responsive to the FOIA request and that any withheld material is exempt from disclosure. See Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994). "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." Id. Summary judgment should not be granted in favor of the agency, however, "where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory." Nat'l Day Laborer Org. Network v. U.S. ICE, 877 F. Supp. 2d 87, 96 (S.D.N.Y. 2012).

## I.   Adequacy of ICE's Search

The agency bears the burden of showing that the search it conducted in responsive to a FOIA request was adequate. Carney, 19 F.3d at 812. The adequacy of the search is measured by the agency's methods, not the search results; accordingly, to establish that the search was adequate, the agency must demonstrate that the search was "reasonably calculated to discover the requested documents," not perfect. See Grand Cent. P'ship, 166 F.3d at 478; see also N.Y. Times Co. v. U.S. Dep't of Justice, 756 F.3d 100, 124 (2d Cir. 2014). The Court may consider, inter alia, the search terms used, the type of search performed, and the nature of the records system or database searched. See NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Justice, 463 F. Supp. 3d 474, 484 (S.D.N.Y. 2020).

Denying the agency's motion for summary judgment is appropriate where a plaintiff raises "tangible evidence" that the agency's search was incomplete. See Carney, 19 F.3d at 812. If a district court finds that an agency's search pursuant to a FOIA request was not adequate, the court may direct the agency to conduct additional searches. See, e.g., Nat'l Day Laborer Org. Network, 877 F. Supp. 2d at 112.

The Court finds that ICE's search was inadequate because it did not comport with the actual terms of the Brennan Center's

12

request. ICE was required to construe Part Two of the request "liberally." See Nation Magazine, Washington Bureau v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995). Instead, ICE read it narrowly. Knight First Amendment Inst. at Columbia Univ. v. Centers for Disease Control & Prevention, No. 20-CV-2761 (AT), 2021 WL 4253299, at *4 (S.D.N.Y. Sept. 17, 2021) (noting that although an agency is not required to expand its search beyond the four corners of the request, it must adhere to the full scope or the precise language of the request); ACLU v. Dep't of Justice, 90 F. Supp.3d 201, 214 (S.D.N.Y. 2015) (holding that the agency erroneously narrowed request by construing two parts of the request together to reach only final documents, as opposed to those "addressing or interpreting," as the language of the request stated). Part Two of the Brennan Center's request seeks "[a]ny memoranda or training materials . . . that purport to explain the policies behind, or guide agents in implementation of" the handbooks requested. The language of "the policies behind" the handbooks seeks on its face more than materials explicitly referring to the handbooks' titles set forth in Part One. ICE was required to construe the Brennan Center's request liberally and to interpret Part Two in the way that would be likely to produce the greatest number of responsive documents. See Knight First Amendment Inst., 2021 WL 4253299, at *5 ("Moreover, even assuming

13

the requests are ambiguous and both readings are reasonable, the
agency had a duty under the FOIA to select the interpretation that
would likely yield the greatest number of responsive
documents."); see also Immigrant Def. Project v. U.S. ICE, 208 F.
Supp. 3d 520, 531-32 (S.D.N.Y. 2016).

The search ICE conducted of both Parts One and Two was also
inadequate where ICE did not use clearly relevant search terms and
where its affidavits fail to provide any rationale for either the
failure to use clearly relevant search terms or the substantial
differences between the terms used by different divisions. First,
a single-term search for only the name of a handbook is an
inadequate search, without, at minimum, searching for a relevant
acronym, short title, or keyword phrase. Yet a single-term search
for the name of the handbook is exactly what the Human Trafficking
Unit head's search consisted of. See Pineiro Decl. (ECF No. 17) ¶¶
43-44. Second, the disparity between the search terms used by
various sections also indicates that the search was inadequate
where some divisions failed to use what other divisions deemed
clearly relevant search terms, including basic phrases like
"training" or "guideline" when the request called for "training
materials" and any materials that "guide" agents in implementing
the handbooks. Id. ¶¶ 44, 47, 57-58. The agency's affidavits

14

provide no rationale for this failure to use clearly relevant terms or for these disparities.

As for the location of the search, the two Undercover Operations Unit Section Chiefs did not search shared drives, although other divisions did; the declarations do not provide any rationale for this substantial difference. Cf. id. ¶¶ 57-58 with ¶¶ 44, 53. If some Sections do not use shared drives, an affidavit can so state. Such patently obvious gaps and disparities require, at minimum, that the agency provide some explanation in its affidavits. Knight First Amendment Inst., 2021 WL 4253299, at *6 ("A failure to use certain search terms, including those emphasized by Plaintiff, is not automatically unreasonable, so long as the agency provided an explanation as to why the search term was not used."). But such obvious gaps in the search terms and locations, unexplained in any way by the agency's affidavits, are grounds to find the search inadequate where they show the search was not reasonably calculated to discover the requested documents. See id. ("Similarly, an agency must search for synonyms or common variants of a term used in the request that are likely to be used in responsive documents, unless it can reasonably justify declining to use them.").

ICE contends that this amounts to the Court inappropriately "Monday-morning quarterbacking" ICE's search terms and locations.

While an agency need not use the requestor's wish list of search terms in order to conduct an adequate search under FOIA, the agency must "provide[] logical explanations for each of the decisions it made as to search terms to be used and how to conduct the searches," so as to show that the agency reasonably calculated the search to uncover the relevant documents. Immigrant Def. Project, 208 F. Supp. 3d at 527. ICE offers no explanation here, let alone a reasonable one, for why it failed to search using patently obvious search terms, let alone why some of the terms it did use were only used in some searches and locations.

ICE argues that because its affidavits describe how each ICE program office ran searches based on its "judgment" as to what places to search and what terms were reasonably likely to retrieve the records that responded to the request, ICE's search was reasonable. But the fact that an affidavit contains sufficient detail describing a search is not a legal conclusion that the search was adequate; to the extent the declarations rely on simply stating in conclusory fashion that an officer used his or her "judgment" to conduct a reasonable search, such a statement is of no use to the Court. The adequacy of the affidavits concerns whether they provide sufficiently detailed descriptions of the underlying facts -- a separate question from this Court's legal determination as to whether the search was "reasonably calculated

16

to uncover all relevant documents" in response to the FOIA request. ICE bears the burden to demonstrate "beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." Nat'l Day Laborer Org. Network, 877 F. Supp. 2d 87, 95 (S.D.N.Y. 2012). ICE has not met its burden here.

Even drawing all reasonable inferences in favor of ICE, as the Court must on summary judgment, the Court finds that no reasonable trier of fact could find that ICE's search was adequate where ICE refused to conduct a search based on a reasonable, let alone liberal reading of Part Two of the Brennan Center's request. In any case, even the narrowly-interpreted search that ICE did conduct still suffered from inconsistencies and gaps for which ICE failed to provide a reason or explanation. The Court thus finds ICE's search was inadequate and, accordingly, orders ICE to conduct a new search based on a liberal reading of Part Two of the request, as clarified by the Brennan Center, and that addresses the aforementioned inconsistencies and gaps.

## II.  Records Withheld Under FOIA Exemption 7(E)

FOIA "strongly favors a policy of disclosure and requires the government to disclose its records unless [they] fall within one of the specific, enumerated exemptions set forth in the Act." See Nat'l Council of La Raza v. U.S. Dep't of Justice, 411 F.3d 350,

355 (2d Cir. 2005). Courts should construe FOIA exemptions narrowly and resolve doubts in favor of disclosure. See Grand Cent. P'ship, 166 F.3d at 478.

FOIA Exemption 7(E) precludes disclosure of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law . . . ." 5 U.S.C. § 552(b)(7)(E). Techniques and procedures refer to "how law enforcement officials go about investigating a crime," whereas guidelines are "an indication or outline of future policy or conduct" that commonly refer to resource allocation. Allard K. Lowenstein Int'l Hum. Rts. Project v. Dep't of Homeland Sec., 626 F.3d 678, 682 (2d Cir. 2010). Material withheld under Exemption 7(E) must "truly embody a specialized, calculated technique or procedure" that would "not be apparent to the public." ACLU v. Dep't of Homeland Sec., 243 F.Supp.3d 393, 404 (S.D.N.Y. 2017).

Here, the parties' disputes with regard to Exemption 7(E) relate to various redacted sections of the National Security Investigations Handbook. Because the Court determined that there

were a relatively small number of sections in dispute and that the statements in the affidavits and "Vaughn Indices" would not allow the Court to meaningfully assess the applicability of Exemption 7(E) to the handbook in question, the Court ordered ICE to produce the redacted sections for in camera review.

ICE duly submitted for in camera review the unredacted portions of 11 sections of the National Security Investigation Handbook: Sections 7.2, 7.4, 7.18, 11.3, 11.4, 11.6, 12.1, 12.2, 12.4, 12.5, and 12.7.[3] See ECF No. 30. As discussed below, the Court finds that the redacted portions of Sections 7.2, 7.4, 11.3, and 11.4 are appropriately withheld under FOIA Exemption 7(E), but that the redactions to the other sections are not appropriately withheld under 7(E) and must be disclosed.

The redactions in Sections 7.2 and 7.4 contain specific information for accessing, using, and querying classified databases, including internal database codes. The redacted sections, as accurately described in the ICE affidavits and Vaughn Indices, are more properly categorized as procedures, rather than

---

[3]   The Brennan Center noted in their cross motion for summary judgment that they are no longer contesting the withholdings in Sections 7.2 and 7.4. See ECF No. 23 at 18 n.9, ECF No. 26 at 10 n.4. However, one of the ICE affidavits notes that the substance of the arguments the Brennan Center presented nonetheless challenge the withholdings in those sections. See ECF No. 27 at 15-16 n.13. The Court thus addresses both sections here.

guidelines. Even if classified as guidelines, the Court finds it reasonable that disclosure of this information could assist third parties in accessing the databases, which could compromise the integrity of the data and risk interference with national security investigations. The Court thus finds that the redactions in Sections 7.2 and 7.4 are appropriately exempted from disclosure under 7(E).

Section 7.18 discusses investigative tools for use in national security investigations, including how pen registers and Title III intercepts may be useful to gather evidence. The affidavits state that this is not a list of tools, but instead specific considerations for how, when, and why to use specific tools and techniques for intelligence reporting. See ECF No. 17 at 31–32; ECF No. 17-1 at 19; ECF No. 27 at 20–21; ECF No. 27-1 at 9–10. The affidavits state that disclosure of this information could assist bad actors seeking to violate or circumvent the law by countering ICE's operational and investigative actions, which could compromise investigations and thereby threaten the public and law enforcement officers. See id.

Upon actual inspection, however, the Court finds that the redactions are simply a list of tools rather than specific instructions for how, when, and why to use such tools. Since material withheld under Exemption 7(E) must "truly embody a

specialized, calculated technique or procedure" that would "not be apparent to the public," ACLU v. Dep't of Homeland Sec., 243 F.Supp.3d at 404, the redactions in Section 7.18 do not qualify. Because the redacted portions of Section 7.18 describe as a general matter that these techniques are available, as opposed to describing how to use them, it is not clear how disclosure of this information could assist bad actors seeking to violate or circumvent the law. The Court thus finds that the redactions in Sections 7.18 are not appropriately exempted from disclosure under 7(E).

With regard to the redactions in Section 11.3, ICE's affidavits state that while there is publicly available information about border searches and electronic devices, the information withheld in Section 11.3 has specific information that is not known to the public about where the electronic device will go within HSI and in what order. See ECF No. 17 at 32; ECF No. 17-1 at 19-20; ECF No. 27 at 21-22; ECF No. 27-1 at 10-11. The affidavits state that knowledge about where evidence will be sent could be used by bad actors to counter operational or investigative actions to thwart investigations and compromise potential evidence. See id.

Upon review, the Court finds that the redacted sections are just what ICE says they are and that disclosure of this information

could be used to counter operational or investigative actions to thwart investigations and compromise potential evidence. The Court thus finds that the redactions in Section 11.3 are appropriately exempted from disclosure under 7(E).

With regard to the redactions in Section 11.4, ICE's affidavits note that while there is publicly available information about border searches and electronic devices, the information withheld in 11.4 has specific information that is not known to the public about the internal ICE process of documenting seizure information. See ECF No. 17 at 32-33; ECF No. 17-1 at 20-21; ECF No. 27 at 22-23; ECF No. 27-1 at 11-12. The affidavits state that release of information about the process, tools, and techniques used by HSI agents to handle evidence could reasonably be expected to risk circumvention of the law because bad actors could use the knowledge to thwart investigations, including how HSI agents use the databases and potential limitations of those systems, which could compromise evidence. See id.

Upon in camera review, the Court finds that the redactions in Section 11.4 are accurately described in the ICE affidavits and Vaughn Indices. The redacted material is more properly categorized as procedures, rather than guidelines. Even if these were considered guidelines, the Court finds it reasonable that disclosure of this information could be used to counter operational

or investigative actions to thwart investigations and compromise potential evidence. The Court thus finds that the redactions in Sections 11.4 are appropriately exempted from disclosure under 7(E).

The redactions in Section 11.6 state that HSI may not conduct border searches on behalf of a third-party agency and that any electronic media obtained through ICE border search authority must be searched by an HSI agent or other "customs officer." It further states that HSI agents "are encouraged" to contact their local embedded attorney for more detailed information about when and how to share information with law enforcement and intelligence authorities. The affidavits state that while ICE directives that outline general information-sharing principles are publicly available, Section 11.6 concerns whether to seek advice of counsel prior to sharing information, which is not known to the public. See ECF No. 17 at 33; ECF No. 17-1 at 21; ECF No. 27 at 23–24; ECF No. 27-1 at 12–13. The affidavits state that disclosing this information could assist bad actors in thwarting investigations. See id.

Upon in camera review, however, the Court finds that the first statement is more appropriately categorized as a policy or guideline, not a technique or procedure, and that the second statement is a general guideline. Since material withheld under

Exemption 7(E) must "truly embody a specialized, calculated technique or procedure" that would "not be apparent to the public," ACLU v. Dep't of Homeland Sec., 243 F.Supp.3d at 404, the redactions in Section 11.6 do not qualify. The Court thus finds that the redactions in Section 11.6 are not appropriately exempted from disclosure under 7(E).

The redactions in Sections 12.1, 12.2, 12.4, 12.5, and 12.7 all describe that HSI agents may play a role in Joint Terrorism Task Force investigations. The affidavits and Vaughn Indices state generally that this information could be used to thwart investigations and that it would help bad actors anticipate how such investigations would be conducted. See ECF No. 17 at 33–36; ECF No. 17-1 at 22–26; ECF No. 27 at 24–26; ECF No. 27-1 at 13–16.

Upon in camera review, however, the redactions in these sections are more appropriately categorized as guidelines, where they are "an indication or outline of future policy or conduct." Allard K. Lowenstein Int'l Hum. Rts. Project, 626 F.3d at 682. They do not "truly embody a specialized, calculated technique or procedure." ACLU v. Dep't of Homeland Sec., 243 F. Supp. 3d at 404. All the redacted sections are at such a high level of generality that the Court finds it most highly unlikely that disclosing this information could pose any particular risk that

bad actors could thwart investigations. The Court thus finds that the redactions in Sections 12.1, 12.2, 12.4, 12.5, and 12.7 are not appropriately exempted from disclosure under 7(E).

## Conclusion

For the reasons set forth above, the Court finds ICE's search was inadequate and, accordingly, orders ICE to conduct a new search based on a liberal reading of Part Two of the request, as clarified by the Brennan Center, and that addresses the inconsistencies and gaps discussed above. The Court also finds that while the redacted portions of Sections 7.2, 7.4, 11.3, and 11.4 are appropriately withheld under FOIA Exemption 7(E), the redacted portions of Sections 7.18, 11.6, 12.1, 12.2, 12.4, 12.5, and 12.7 are not appropriately withheld under 7(E) and must be disclosed. Accordingly, the Court grants partial summary judgment in favor of the Brennan Center, on the grounds that ICE's search was inadequate and that Sections 7.18, 11.6, 12.1, 12.2, 12.4, 12.5, and 12.7 of the NSI Handbook were not properly withheld under FOIA Exemption 7(E); and grants partial summary judgment in favor of ICE, on the ground that Sections 7.2, 7.4, 11.3, and 11.4 were properly withheld under FOIA Exemption 7(E).

The Clerk is directed to close the entries at docket numbers 15 and 18 and close the case.

SO ORDERED.

Dated:    New York, NY

          November 29, 2021          JED S. RAKOFF, U.S.D.J.